CASE NO. 13-7027

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals
### For The District of Columbia Circuit


## STEPHANIE Y. BROWN,

**Plaintiff – Appellant**

v.

## ALLEN L. SESSONS, PRESIDENT, UNIVERSITY OF THE DISTRICT OF COLUMBIA, ET AL.,

**Defendants – Appellees.**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

---

**BRIEF OF APPELLEES ALLEN L. SESSOMS, ET AL.**

---


**Yoora Pak**
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
**8444 Westpark Drive**
**Suite 510**
**McLean, Virginia 22102**
**(703) 245-9300**

*Counsel for Defendants The University of the District of Columbia, Board of Trustees of the University of the District of Columbia, and Allen Sessoms*

## IN THE UNITED STATES COURT OF APPEALS FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **STEPHANIE Y. BROWN,** | ) | |
| | ) | |
| **Apellant,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 13-7027** |
| | ) | **(CA -1:12-cv-00799-RJL)** |
| **ALLEN L. SESSOMS, PRESIDENT,** | ) | |
| **UNIVERSITY OF THE DISTRICT OF** | ) | |
| **COLUMBIA, et al.,** | ) | |
| | ) | |
| **Appellees.** | ) | |

## APPELLEES' CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Appellees The University of the District of Columbia David A. Clarke School of Law, Board of Trustees of the University of the District of Columbia, and Allen Sessoms, by and through counsel, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP and pursuant to this Court's February 22, 2013 Order and Rule 28(a)(1) of the Local Rules of this Court, hereby submit their Certificate as to the Parties, Rulings, and Related Cases, certifying as follows:

    (A)    **Parties and Amici.**    The parties to this appeal are as follows:

- <u>Appellant</u>: Stephanie Y. Brown

- <u>Appellees</u>: The University of the District of Columbia David A. Clarke School of Law, Board of Trustees of the University of the District of Columbia, and Allen Sessoms (hereinafter collectively referred to as "UDC").

No intervenors or amici appeared before the United States District Court for the District of Columbia in connection with the above-referenced action. At this time, UDC is unaware of any intervenors or amici who intend to appear before this Honorable Court in connection with this appeal.

**(B)    Rulings Under Review.**    On January 28, 2013, the United States District Court for the District of Columbia dismissed Ms. Brown's claims, which were filed in Case No. 1:12-cv-00799-RJL against UDC, with prejudice. The Order granting UDC's Motion to Dismiss, Document No. 24 filed in Case No. 1:12-cv-00799-RJL, dismissed the entire Amended Complaint. A copy of this Order, along with the Court's January 28, 2013 Memorandum Opinion in support thereof, were filed on January 29, 2013.

Pursuant to the Notice of Appeal, Ms. Brown seeks review of the lower court's January 28, 2013 Order (R. Leon) and accompanying memorandum opinion granting UDC's (i.e., The University of the District of Columbia David A. Clarke School of Law, Board of Trustees of the University of the District of Columbia, and Allen Sessoms's) Motion to Dismiss, which was filed in accordance with Federal Rule of Civil Procedure 12(b)(6).

At the time of filing this Certificate, this Memorandum Opinion had not yet been published. However, both the January 28, 2013 Memorandum Opinion and Order appear as part of the U.S. District Court for the District of Columbia's docket at Docket Nos. 23 and 24, respectively. The Memorandum Opinion and Order are included in the U.S. District Court Clerk's Transmission of the Notice of Appeal and Docket Sheet.

**(C) Related Cases**: There are no related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

Dated: March 25, 2013                    Respectfully submitted,

                                        WILSON, ELSER, MOSKOWITZ,
                                        EDELMAN& DICKER, LLP

                            By:    */s/ Yoora Pak*
                                        Yoora Pak (D.C. Bar No. 467007)
                                        8444 Westpark Drive - Suite 510
                                        McLean, VA 22102-5102

393920.2

(703) 245-9300 (telephone)
(703) 245-9301 (facsimile)
yoora.pak@wilsonelser.com
*Counsel for Appellees The University of the District
of Columbia, Board of Trustees of The University of
the District of Columbia, and Allen Sessoms*

393920.2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 25, 2013, I electronically filed the foregoing Certificate as to Parties, Rulings, and Related Cases with the Clerk of Court using the Court's CM/ECF system, which will then send notification of such filing (NEF) to the following:

Donald M. Temple, Esquire
1229 15th Street, N.W.
Washington, D.C. 20005
dtemplelaw@gmail.com
*Counsel for Plaintiff*

 */s/ Yoora Pak*
Yoora Pak (D.C. Bar No. 467007)
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
8444 Westpark Drive - Suite 510
McLean, VA 22102-5102
(703) 245-9300 (telephone)
(703) 245-9301 (facsimile)
yoora.pak@wilsonelser.com
*Counsel for Appellees*

393920.2

# TABLE OF CONTENTS

INTRODUCTON.................................................................................. 1

STATEMENT OF ISSUE.................................................................. 1

I.   THE MERGER AGREEMENT IS BINDING UNDER D.C. LAW. ............ 1

II.  THE BOARD OF TRUSTEES DELEGATES THE AUTHORITY
     AND RESPONSIBILITY FOR THE ACADEMIC AND
     ADMINISTRATIVE AFFAIRS AND OPERATIONS OF THE
     UNIVERSITY AND ITS COMPONENTS TO THE UNIVERSITY
     PRESIDENT. ........................................................................... 2

III. THE UNIVERSITY PRESIDENT HAS FINAL APPROVAL OF
     SCHOOL OF LAW FACULTY PROMOTIONS AND TENURE
     RECOMMENDATIONS. ............................................................. 3

IV.  THE UNIVERSITY PRESIDENT PROPERLY EXERCISED HIS
     DISCRETION TO DENY PLAINTIFF'S TENURE AND
     PROMOTION APPLICATION........................................................ 6

SUMMARY OF ARGUMENT .............................................................. 9

STANDARD OF REVIEW ................................................................ 11

ARGUMENT ................................................................................ 11

I.   THE DISTRICT COURT DID NOT APPLY A HEIGHTENED
     STANDARD IN DISMISSING APPELLANT'S CLAIMS ........................ 11

II.  THE DISTRICT COURT PROPERLY DISMISSED APPELLANT'S
     BREACH OF CONTRACT CLAIM.................................................. 12

     A.   Appellant is not entitled to the assumption of truth with respect to
          conclusory statements or legal conclusions. .......................... 13

     B.   The District Court properly concluded that DCSL's Faculty Handbook
          is not a binding contract .................................................... 17

     C.   The District Court properly dismissed the breach of contract claim
          because, even if there was a binding contract, Appellant cannot plead
          any facts to support her breach of contract claim ................... 19

III. THE LOWER COURT PROPERLY DISMISSED APPELLANT'S
     BREACH OF COVENANT OF GOOD FAITH AND FAIR
     DEALING CLAIM. .................................................................. 21

IV.  THE LOWER COURT PROPERLY DISMISSED APPELLANT'S
     WRONGFUL TERMINATION CLAIM. ........................................... 21

V.  THE LOWER COURT PROPERLY DISMISSED APPELLANT'S RACE AND GENDER DISCRIMINATION CLAIMS UNDER THE D.C. HUMAN RIGHTS ACT AND 42 U.S.C. § 1981.................................23

VI. THE LOWER COURT PROPERLY DISMISSED APPELLANT'S NEGLIGENT SUPERVISION CLAIM. .......................................................28

**CONCLUSION**...................................................................................................30

# TABLE OF AUTHORITIES

*Cases*

*Allworth v. Howard University,*
  890 A.2d 194 (D.C. 2006)..................................................27, 28

*Atherton v. Dist. of Columbia Office of the Mayor,*
  567 F.3d 671 (D.C. Cir. 2009)................................................ 11

*Brown v. George Washington Univ.,*
  802 A.2d 382 (D.C. 2002) ..............................................27, 28

*Cambridge Holdings Group, Inc. v. Federal Ins. Co.,*
  357 F. Supp. 2d 89 (D.D.C. 2004) ........................................ 12

*Carson v. Sim,*
  778 F. Supp. 2d 85 (D.D.C. 2011)......................................... 23

*Chisholm v. Dist. of Columbia,*
  666 F. Supp. 2d 96, (D.D.C. 2009)........................................ 23

*Elam v. Board of Trustees of Univ. of the District of Columbia,*
  530 F. Supp. 2d 4 (D.D.C. 2007)....................................24, 27

*George v. Leavitt,*
  407 F.3d 405 (C.A.D.C. 2005)............................................. 26

*Ihebereme v. Capital One,*
  730 F. Supp. 2d 40 (D.D.C. 2010) ........................................ 12

*Islamic Am. Relief Agency v. Gonzales,*
  477 F.3d 728 (D.C. Cir. 2007)............................................. 14

*Jia Di Feng v. Lim,*
  786 F. Supp. 2d 96 (D.D.C. 2011)........................................ 14

*Jolevare v. Alpha Kappa Alpha Sorority, Inc.,*
  521 F. Supp. 2d 1 (D.D.C. 2007)......................................... 28

*Phelan v. City of Mt. Rainier,*
  805 A.2d 930 (D.C. 2002) .................................................. 28

*Public Citizen v. Clerk, United States District Court for the District of Columbia,*
  451 F. Supp. 2d 109 (D.D.C. 2006), aff'd,
  486 F.3d 1342 (D.C. Cir. 2007) ........................................... 14

*Regents of the Univ. of Mich. v. Ewing,*
  474 U.S. 214 (1985).......................................................... 27

*Sisco v. GSA National Capital Federal Credit Union,*
  689 A.2d 52 (D.C. 1997). ................................................... 18

*Tarpeh-Doe v. United States,*
  28 F.3d 120 (D.C. Cir. 1994)............................................... 28

*Trudeau v. FTC,*
  456 F.3d 178 (D.C. Cir. 2006) ............................................. 13

*Tsintolas Realty Co. v. Mendez,*
    984 A.2d 181 (D.C. 2009) ........................................................... 12
*U.S. ex rel. Yesudian v. Howard University,*
    153 F.3d 731 (D.C. Cir. 1998). ............................................. 17, 18
*Youngberg v. Romeo,*
    457 U.S. 307 (1982) ................................................................... 27

**Statutes**
42 U.S.C. § 1981 .................................................................................. 24
D.C. Code § 38-1202 ............................................................................. 2
D.C. Code § 38-1202.01 ..................................................................... 2, 3
D.C. Code § 38-1202.11 ............................................................. 1, 2, 20

**Regulations**
D.C. Mun. Regs. 8-A § 1423 ............................................................ 5, 22
D.C. Mun. Regs. 8-A § 1424 ................................................................. 5
D.C. Mun. Regs. 8-B § 100.3 ............................................................... 3
D.C. Mun. Regs. 8-B § 200.1 ............................................................... 3
D.C. Mun. Regs. 8-B § 202.1 .......................................................... 3, 30
D.C. Mun. Regs. 8-B § 202.6 .......................................................... 3, 30

\* There are no specific authorities upon which we chiefly rely.  All authorities are relevant to the issues in this case.

## <u>GLOSSARY</u>

1. District of Columbia David A. Clarke School of Law – "the University" or "UDC"

2. Board of Trustees of the University of the District of Columbia – "Board of Trustees"

3. Allen L. Sessoms – "University President"

4. District of Columbia School of Law – "DCSL"

5. Faculty Evaluation and Retention Committee – "FERC"

## INTRODUCTON

Appellees the University of the District of Columbia David A. Clarke School of Law ("the University" or "UDC"), Board of Trustees of the University of the District of Columbia ("Board of Trustees") and Allen L. Sessoms ("University President") [hereinafter collectively referred to as "Defendants" or "Appellees"], by and through counsel, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, hereby submit this brief in opposition to Appellant Stephanie Y. Brown's appeal.

## STATEMENT OF ISSUE

Whether the lower court properly granted Defendants' Motion to Dismiss Plaintiff's Complaint for failure to state a claim under Rule 12(b)(6).

## STATEMENT OF FACTS

### I.    THE MERGER AGREEMENT IS BINDING UNDER D.C. LAW.

In November 1995, the governing bodies of the District of Columbia School of Law ("DCSL") (through its Board of Governors) and the University (through its Board of Trustees) entered into a Merger Agreement to memorialize the intent and plan for merging these two institutions of education. *See* Defendant's Motion to Dismiss ("MTD"), Exhibit 1 (Merger Agreement). *See also* Am. Compl. ¶ 5.

In 1996, the D.C. Council passed legislation merging DCSL with the University. *See* D.C. Code § 38-1202.11 (2012) (MTD, Exhibit 2). The

1

University's Board of Trustees also recognized the merger by amending its regulations to include the School of Law as a component of the University. *See* D.C. Mun. Regs. 8-B § 100.3 (2012), (MTD, Exhibit 3). *See also* Am. Compl. ¶ 5.

To effectuate the merger, the D.C. Council legislatively authorized the transfer of all of the functions, powers, and duties of DCSL's Board of Governors to the University's Board of Trustees. *See* D.C. Code § 38-1202.11(a) (2012) (MTS, Exhibit 2). *See also* Am. Compl. ¶¶ 5-6. In addition, the D.C. Council codified and incorporated by reference the provisions set forth in the Merger Agreement governing the merger of DCSL into the University. Specifically, D.C. Code § 38-1202.11(c) states: "The [Board of] Trustees shall be bound by the terms of the Merger Agreement between the University of the District of Columbia and the District of Columbia School of Law." *Id.*

## II. THE BOARD OF TRUSTEES DELEGATES THE AUTHORITY AND RESPONSIBILITY FOR THE ACADEMIC AND ADMINISTRATIVE AFFAIRS AND OPERATIONS OF THE UNIVERSITY AND ITS COMPONENTS TO THE UNIVERSITY PRESIDENT.

By statute, the University's Board of Trustees is charged "with the responsibility of governing the University of the District of Columbia" and "possess[es] all the powers necessary or convenient to accomplish the objects and perform the duties authorized by [D.C. Code § 38-1202]." D.C. Code § 38-1202.01(a) (2012) (MTD, Exhibit 4). In furtherance of its mission and responsibilities, the Board of Trustees may, among other things, "[a]dopt,

prescribe, amend, repeal, and enforce bylaws, rules, and regulations it considers necessary for the governance and administration of the University." D.C. Code § 38-1202.01(a)(7) (2012) (MTD, Exhibit 4).

Pursuant to this authority, the Board of Trustees appoints the President of the University, who is the Chief Executive Officer of the University. *See* D.C. Mun. Regs. 8-B § 200.1 (2012) (MTD, Exhibit 5). The Board of Trustees then delegates the "authority and responsibility for the academic and administrative affairs and operations of the University and the components thereof established under Section 100.3 subject to the provisions of this Title and applicable law" to the University's President. D.C. Mun. Regs. 8-B § 202.1 (2012) (MTD, Exhibit 6). The School of Law is a component of the University. *See* D.C. Mun. Regs. 8-B § 100.3 (2012) (MTD, Exhibit 3).

III.    THE UNIVERSITY PRESIDENT HAS FINAL APPROVAL OF SCHOOL OF LAW FACULTY PROMOTIONS AND TENURE RECOMMENDATIONS.

The Board of Trustees delegates to the University President the authority to "appoint, promote, demote, and dismiss University employees," subject to applicable law. D.C. Mun. Regs. 8-B § 202.6 (2012) (MTD, Exhibit 6). On the effective date of the merger, "all persons employed by the D.C. School of Law on the date of the merger [were] transferred to the University of the District of Columbia School of Law and [became] employees of the University." See MTD,

3

Exhibit 1 at 7. Thus, as of the merger, all School of Law faculty members became subject to the President's authority with respect to appointments and promotions, among others. *See* Am. Compl. ¶ 7.

To align the respective rights of the DCSL faculty with the University President's authority, the Merger Agreement expressly provides that the President will have final approval of tenure and promotion recommendations:

> The provisions of existing DCSL personnel rules, as set forth in Chapter 14 of Title 8A DCMR, will become the University rules applicable to law school faculty appointment and service, *except as otherwise provided in this section.* ...
>
> The Faculty Evaluation and Retention Committee shall evaluate faculty candidates for award of tenure and make recommendations to the Dean. *Based on the recommendation of the Faculty Evaluation and Retention Committee, the Dean will recommend faculty candidates for promotion and tenure to the Provost, who shall forward those recommendations to the President with his or her own recommendations.* The provisions of Chapter 14 of the DCSL Rules shall be amended to provide for the Dean to forward recommendations for promotion and tenure to the President of the University, through the Provost, for final approval.

MTD, Exhibit 1 at 8 (emphasis provided). The plain language of the Merger Agreement unequivocally bestows the President with the final approval of tenure and promotion recommendations. *See* MTD, Exhibit 1 at 8.

Notably, Chapter 14 of Title 8-A of the D.C. Municipal Regulations (as mentioned above in the Merger Agreement) does not reference any governing body

4

with respect to the approval of tenure and promotion recommendations. To that end, D.C. Mun. Regs. 8-A § 1424 (Faculty Tenure) (MTD, Exhibit 7) provides:

> 1424.1     The faculty shall adopt written criteria for determining whether to award tenure to a member of the faculty. The criteria shall conform to the American Bar Association Principles on Academic Freedom and Tenure. The criteria shall be subject to approval by the Dean.
>
> 1424.2     The faculty shall adopt written procedures for the evaluation of faculty members eligible for tenure. The procedures for evaluation shall be subject to approval by the Dean.
>
> 1424.3     The faculty shall evaluate each faculty member who is eligible for tenure, in accordance with the criteria and procedures approved under this section, and shall forward the faculty recommendation to the Dean.
>
> 1424.4     Promotion of tenured faculty members shall be in accordance with the provisions of §1423 of this chapter.
>
> D.C. Mun. Regs. 8-A § 1423 (MTD, Exhibit 8), as referenced in Section 1424.4, provides:
>
> 1423.1     The promotion of members of the faculty shall be accomplished through the appointment process, in accordance with the provisions of this chapter. The appointment of a faculty member by the Dean at a higher rank than the faculty member currently holds shall be deemed to be a promotion.
>
> 1423.2     The Dean shall request a recommendation from the faculty for each faculty member who is eligible for promotion.
>
> 1423.3     The faculty shall adopt written procedures for the evaluation of faculty members who are candidates for promotion. The procedures for evaluation shall be subject to approval by the Dean.

The Faculty Handbook (MTD, Exhibit 9) also does not provide who or what body will be the final authority on tenure recommendations. The Handbook only addresses the process for the faculty's consideration of a tenure application. *See* MTD, Exhibit 9 at 14-15.

Thus, by adopting and incorporating the Merger Agreement by reference, and by implementing and binding the University to the terms of the Merger Agreement, the Board of Trustees and the D.C. Council established the following tenure and promotion process for law school faculty, like Plaintiff -- initial consideration by the Faculty Evaluation and Retention Committee ("FERC"), which forwards its positive recommendations to the Dean, who then forwards the recommendations with his or her own recommendations to the Provost, who then forwards the recommendations with his or her own recommendations to the University President for "final approval." *See* MTD, Exhibit 1 at 8.

## IV.   THE UNIVERSITY PRESIDENT PROPERLY EXERCISED HIS DISCRETION TO DENY PLAINTIFF'S TENURE AND PROMOTION APPLICATION.

Plaintiff has been associated with the Law School since 1988. Am. Compl. ¶ 1. She submitted her tenure application on January 5, 2009. *Id.* ¶ 14. At the same time, Plaintiff also applied for a promotion from Associate Professor to Professor. *See id.* ¶ 14.

FERC met on May 14, 2009, to consider Plaintiff's application for tenure and promotion based upon the criteria set forth in the Faculty Policies - Standards and Procedures for Retention and Tenure (MTD, Exhibit 10). Am. Compl. ¶¶ 12, 14. During the meeting, FERC voted to recommend approval of Plaintiff's application for tenure, but not her application for promotion to Professor.[1] *See* Am. Compl. ¶ 14. In accordance with the process set forth in the Merger Agreement, FERC's recommendation to approve only Plaintiff's tenure application was forwarded to Dean Katherine S. Broderick on or about May 21, 2009. Am. Compl. ¶ 14. FERC did not forward Plaintiff's promotion application to the Dean.

On June 10, 2009, Dean Broderick expressed concerns about Plaintiff's application for tenure and suggested that FERC withdraw its recommendation to grant tenure. Am. Compl. ¶¶ 16-17. Dean Broderick's concern was based upon the fact that two of the three articles submitted by Plaintiff as part of her application had not yet been published. Am. Compl. ¶ 20. Almost ten months after submitting her tenure application, one of Plaintiff's articles was finally accepted for publication. Am. Compl. ¶ 21. FERC updated and revised its recommendation on October 30, 2009. *See* Am. Compl. ¶ 22.

---

[1] Throughout her Amended Complaint, Plaintiff disingenuously asserts that the Provost and the President of the University denied her application for promotion to Professor. *See* Am. Compl. ¶¶ 29, 30, 39, 43, 52, 60, 61, 65, 66, 70, 75, 76, 79, 87, and 93. Plaintiff's application for promotion, however, was denied in the first instance by her own peers on FERC.

In accordance with the process set forth in the Merger Agreement, on December 8, 2009, Dean Broderick forwarded FERC's tenure recommendation with her own comments in support of the tenure recommendation to Graeme Baxter, Interim Provost and Vice President for Academic Affairs. *See* Am. Compl. ¶¶ 19, 23, 24. Ms. Baxter is a white female.

On June 30, 2010, the Provost informed Dean Broderick that Plaintiff's application was deficient. *See* Am. Compl. ¶ 25. Specifically, the Provost expressed her belief that Plaintiff's scholarship did not meet the School of Law's standards.[2] *See id.*

On June 6, 2011, the Provost notified Plaintiff that her application for tenure was denied. *See* Am. Compl. ¶ 27; *see also* MTD, Exhibit 11 (Letter dated June 6, 2011 from Provost to Plaintiff). On that same date, the Provost simultaneously notified Plaintiff that she was entitled to a terminal one-year appointment for academic year 2011-2012. *See* Am. Compl. ¶ 27; *see also* MTD, Exhibit 11.

In accordance with the process set forth in the Merger Agreement, the Provost forwarded Plaintiff's tenure application to the University President. *See*

---

[2] At the time that Plaintiff submitted her application for tenure, one of the applicable criteria for an award of tenure was the requirement that the professor "submit at least three published scholarly works of high quality or three scholarly equivalent works related to the practice of law ..." *See* MTD, Exhibit 10 at 4-5. Plaintiff concedes that at the time she submitted her tenure application, Plaintiff only had one published article (which was published in 2003) and two offers of publication. *See* Am. Compl. ¶¶ 17, 20.

Am. Compl.¶ 29.[3]  As alleged in the Amended Complaint, on October 26, 2011, the University President, Dr. Allen Sessoms (who is an African-American male), denied Plaintiff's tenure application and did not forward it to the Board of Trustees.  Am. Compl. ¶ 30.

On May 9, 2012, almost eleven months after the Provost informed Plaintiff that her tenure application had been denied and that her employment would be terminated at the end of the 2011-2012 academic year and almost seven months after the President denied her tenure application, Plaintiff filed this instant lawsuit. Her Amended Complaint for Damages, which was filed May 22, 2012, seeks no less than $11,750,000.00 in damages and injunctive relief.

## SUMMARY OF ARGUMENT

The District Court for the District of Columbia properly dismissed Appellant's Complaint for failure to state a claim under Rule 12(b)(6). Specifically, Appellant's breach of contract claim was properly dismissed because the DCSL Faculty Handbook did not constitute a binding, enforceable contract.

---

[3] Plaintiff asserts that this action – the Provost forwarding Plaintiff's tenure application to the President --- "further delayed due consideration by the Board of Trustees of Brown's application for tenure and a full professorship."  Am. Compl. ¶ 29; *see also* Am. Compl. ¶¶ 37, 41, 54, 65, 76, and 93.  Plaintiff assertion is, at best, disingenuous in light of her own assertion that the proper procedure was for the Dean to forward a recommendation for promotion and tenure "to the President of the University through the Provost and President for final approval by the Board of Trustees."  See Am. Compl. ¶ 8.  Even according to Plaintiff's own version of the tenure review process, Defendants properly engaged in the review process.

Furthermore, even if it was a valid contract, there was no breach because Appellant received the exact process outlined in the Handbook.  Similarly, Appellant's claim for breach of covenant of good faith and fair dealings fails because there can be no breach without a valid contract.

The district court also properly dismissed Appellant's wrongful termination claim.  In doing so, the district court correctly held that the wrongful termination claim was a mere restatement of her breach of contract claim, and properly recognized that Appellant's employment was terminable at will and that she failed to identify any public policy which was allegedly violated by her discharge. Appellant's race and gender discrimination claims were also properly dismissed because Appellant failed to plead any plausible facts to create an inference of discrimination with respect to the denial of her promotion and/or tenure.  Lastly, the district court properly dismissed Appellant's negligent supervision claim because Appellant failed to identify any specific legal duty or standard of care that the DCSL and the Board allegedly breached by allowing the Provost and/or the President to make tenure decisions.

Appellant has not presented any reasonable basis for reversing the lower court's decision, and thus, it should be affirmed in its entirety.

## STANDARD OF REVIEW

The applicable standard of review on an appeal from the district court's granting of a motion to dismiss under Rule 12(b)(6) is *de novo*. *See Atherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 671, 681 (D.C. Cir. 2009).

## ARGUMENT

I. THE DISTRICT COURT DID NOT APPLY A HEIGHTENED STANDARD IN DISMISSING APPELLANT'S CLAIMS

In her appeal, Appellant baldly asserts that the District Court "applied an inaccurate heightened pleading standard, improperly weighed evidence and determining (sic) facts, including factual ambiguities." (Appellant's Brief ("App. Brief"), p. 13-14). In making this assertion, Appellant does not provide any supporting allegations.

As demonstrated below, the District Court properly treated Appellant's factual allegations as true and granted her the benefit of all inferences that would reasonably be derived from the alleged facts. *See* Memorandum Opinion ("Mem. Op.") at 4-5; Defs.' Motion to Dismiss at 10. As much as Appellant wishes otherwise, that the District Court concluded that all of Appellant's claims should be dismissed after applying the proper standard of review does not constitute legal error by the District Court.

11

## II.  THE DISTRICT COURT PROPERLY DISMISSED APPELLANT'S BREACH OF CONTRACT CLAIM.

The lower court properly dismissed Appellant's breach of contract claim because the Amended Complaint "fail[ed] to allege the facts necessary to show that plaintiff and DCSL intended to be bound by the Faculty Handbook, or that the parties mutually assented to its terms."[4] *Brown v. Dist. of Columbia, et al.,* 1:12-cv-00799-RJL [hereinafter cited as "Mem. Op."] at 9.  As held by the District Court, the facts necessary to support the requisite elements of a contract, namely intent to be bound and mutual assent, were impossible, as "the Faculty Handbook clearly states that it is 'provided as a reference for all faculty members,' and it is 'not intended to be a substitute for the District of Columbia Law Rules (CDCR Title 8A), nor is it intended to provide a detailed compendium of various operating rules and procedures.'" Mem. Op. at 9 (citing Defs.' Mot., Ex. 9 at I (Preface)).

The lower court also properly held that even if it accepted as true Appellant's allegations that the Faculty Handbook was a valid contract and that the

---

[4] To state a claim for breach of contract, Plaintiff was required to plead: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach. *Ihebereme v. Capital One,* 730 F. Supp. 2d 40, 47 (D.D.C. 2010) (citing *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181, 187 (D.C. 2009)).  Furthermore, under District of Columbia law, Plaintiff was required to allege facts establishing (1) an agreement as to all material terms of the contract, and (2) an intention of the parties to be bound.  *See Cambridge Holdings Group, Inc. v. Federal Ins. Co.,* 357 F. Supp. 2d 89, 94 (D.D.C. 2004) (citations and quotations omitted).

Faculty handbook incorporated the Merger Agreement, Appellant's breach of contract claim failed because she received "the very promotion and tenure review process outlined in the Faculty Handbook and the Merger Agreement." Mem. Op. at 10-11. Accordingly, the District Court correctly dismissed the breach of contract claim because by accepting all of Appellant's allegations as true, it was clear that the University properly followed the review process. Mem. Op. at 10-11. Therefore, the District Court properly concluded that Appellant could not plead, and had not pled, a breach of contract. Mem. Op. at 11.

A.   <u>Appellant is not entitled to the assumption of truth with respect to conclusory statements or legal conclusions.</u>

Appellant argues on appeal that the Faculty Handbook was in fact a binding contract and that her breach of contract claim was subjected to a heightened pleading standard. In support of her appeal, she asserts that she pled sufficient facts in Paragraphs 5-14, 40-45, and 59-62 of the Amended Complaint to survive a motion to dismiss. App. Brief at 16-17.

However, in making this argument, Appellant is asking this Court to apply a much more favorable standard than to which she is entitled. To that end, it is well settled that only the *facts* alleged in the complaint must be treated as true and the plaintiff must be given the benefit of all reasonable inferences that can be derived from the *facts*. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). It is also well settled that the District Court "need not ... accept inferences that are unsupported

13

by the facts set forth in the complaint … [or] legal conclusions cast in the form of factual allegations." *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007) (citations omitted); *Jia Di Feng v. Lim*, 786 F. Supp. 2d 96, 101 (D.D.C. 2011) (citations and quotations omitted).   In addition, "[s]ome factual allegations may render success on the merits impossible, and these also are accepted as true." *Public Citizen v. Clerk, United States District Court for the District of Columbia*, 451 F. Supp. 2d 109, 114 (D.D.C. 2006), *aff'd*, 486 F.3d 1342 (D.C. Cir. 2007).   Contrary to these well-established principles with respect to the standard of review for a Rule 12(b)(6) motion to dismiss, Appellant contends that the District Court should have also accepted and treated as true all of the conclusory statements and legal conclusions that are interwoven through her factual assertions.

More specifically, Paragraphs 9 through 13 contain conclusory statements and legal conclusions about the interpretation of the interplay between the Merger Agreement, Faculty Handbook and Title 8A of the DCMR.   For example, in Paragraph 10, Appellant argues that "the Agreement and Chapter 14 of Title 8A DCMR should also be read in conjunction with the Faculty handbook ("Handbook") which constitutes the term and condition of a binding contract between law faculty members and the law school." Am. Compl. ¶ 10.   The District

14

Court was not required to accept this legal argument cast in the form of a factual allegation as true for purposes of dismissing the breach of contract claim.

Similarly, Paragraphs 40 through 45 recites the elements of Appellant's claims and contains only her legal arguments and conclusions with respect to these elements:

> 40.    Defendants has (sic) thus breached the terms of the Merger Agreement and the Faculty Handbook, as well as its duty of good faith and fair dealing.

> 41.    President Sessoms owed Plaintiff a duty to follow applicable law and the Faculty handbook, to no usurp the Board of Trustee's authority, nor deprive Plaintiff of timely consideration of FERC and the Dean's favorable recommendation of her tenure application.

> 42.    The UDC Board abrogated its duties and responsibilities in failing to supervise President Sessoms and to ensure that he not make decisions reserved by law to the Board. The Board further failed to exercise due oversight to ensure that its executive officials act in accordance with the law and the Faculty Handbook.

> 43.    To date, having deferred to [P]resident Sessoms, Defendant UDC and its Board of Trustees have failed to make a final decision regarding her tenure and promotion to full professorship in accordance with applicable law, the Merger Agreement and the Faculty Handbook.

> 44.    Defendant UDC, through its University Provost and President, subjected Plaintiff to an illegal tenure review process, as well as an illegal double standard, one which was substantially higher than that which it applied to William G. McLain ("McLain"), a white male law professor with no legal publications.

Am. Compl. ¶¶ 40-44. Because these paragraphs contain nothing more than legal assertions and conclusions, the District Court was not required to accept these assertions and conclusions as true.

The error of Appellant's assertion that the lower court somehow applied a "heightened standard" in dismissing her claim and her misunderstanding of the proper standard of review applied by the District Court is demonstrated by her insistence that the assertions in Paragraphs 59 through 62 must be accepted as true because they are factual. Paragraphs 59 through 62 state as follows:

**COUNT I**
**BREACH OF CONTRACT**
**University of the District of Columbia (UDC) and Board**

59.    Paragraphs 1 through 58 are fully incorporated as if set forth full herein.

60.    Defendant UDC failed to act in accordance with the the (sic_ Faculty Handbook, which incorporates the Merger Agreement. Further the contract rights in the Handbook are well known, uniform and clearly established in the Defendant UDC's customs, practices and policies, to wit that all law faculty tenure applications are subject to FERC review and consideration; that is (sic) makes recommendations to the law school Dean; and that final decisions regarding tenure approval have been made by the Board of Trustees. Defendants breached Plaintiff's contractual rights by allowing the Provost and its President to impede Plaintiff's tenure review and promotion process, and ultimately preclude its Board of Trustees from consideration of Plaintiff's tenure application and FERC's favorable recommendation thereof.

61.    Dean Broderick should have acknowledged that the the (sic) President, by law, did not have final authority to approve tenure applications. Further, she should have advised the Board

and President Sessoms of the state of the lawand (sic) that any final consideration by the Provost and/or the President of Plaintiff's tenure and promotion application was prohibited. She did not.

62. Dean Broderick, President Sessoms and the present and former Provosts' respective actions breached Plaintiff's contract with Defendant UDC, to wit, they violation the Handbook's (sic) (which expressly incorporated the Merger Agreement). The Handbook did not give President Sessoms final authority over law faculty tenure.

Am. Compl. ¶¶ 59-62. Without question, on its face, Paragraphs 59 through 62 set forth Appellant's legal conclusions with respect to the breach of contract claim -- none of which the District Court was required to accept as true.

B.    <u>The District Court properly concluded that DCSL's Faculty Handbook is not a binding contract</u>

Appellant also argues in this appeal that the Faculty Handbook in fact constitutes a binding contract. She erroneously relies on *U.S. ex rel. Yesudian v. Howard University*, 153 F.3d 731 (D.C. Cir. 1998), to support her assertion. In *Yesudian*, a jury decided that Howard wrongfully terminated Yesudian in breach of contract based upon Howard's Faculty Handbook. Howard filed a motion for judgment, asserting that its Faculty Handbook did not constitute a contract because it contained a disclaimer and that, even if it could be construed as a binding contract, the plaintiff had not been given any additional consideration for the promises he alleged it contained. The district denied the motion for judgment. The district court concluded that, pursuant to *Sisco v. GSA National Capital*

17

*Federal Credit Union*, 689 A.2d 52, 55 (D.C. 1997), the Handbook at issue in *Yesudian* nullified the presumption of at-will employment (i.e., employees who may be fired at will at the employer's discretion) by setting a policy that stated that permanent employees could only be discharged after specific "preconditions" had been met. The lower court further held that there was ambiguity in the handbook because "the same paragraph of the Handbook that says it is not to be construed as a contract also says the Handbook is 'intended to promote a better understanding of what staff employees can *expect* from the University and what the University can expect from them in return.'" *Yesudian*, 153 F.3d at 747. Because of the ambiguity, and by implementing a policy that "overcomes the at-will presumption[,] … [Howard's] manual … create[d] a factual question for the jury as to the existence of a contract." *Id.* at 54 (citations and quotations omitted).

Here, in this case, there is no confusion and no ambiguity with respect to the tenure and promotion review process. The process itself is straightforward without creating a factual question for the jury to decide. As noted by Judge Leon, the Faculty Handbook does not include the process Appellant she wishes for – in other words, review of her application by FERC, the Dean, and final approval by the Board of Trustees. Rather, the process in the Faculty Handbook is silent as to the tenure review process after FERC's assessment and vote. Mem. Op. at 11. On the other hand, the Merger Agreement expressly contains the entire process – review

18

by FERC, the Dean, and the Provost, and final approval by the President. Mem. Op. at 11. Because the process in the Merger Agreement compliments and completes the partial process outlined in the Faculty Handbook, there is no issue of conflict in the written documents. In addition, as noted by Judge Leon, "the Faculty Handbook clearly states that it is 'provided as a reference for all faculty members,' and it is 'not intended to be a substitute for the District of Columbia Law Rules (CDCR Title 8A), nor is it intended to provide a detailed compendium of various operating rules and procedures.'" Mem. Op. at 9 (citing Defs.' Mot., Ex. 9 at I (Preface)). Thus, instead of creating confusion or an ambiguity, DCSL's Faculty Handbook clearly indicates that it is not a binding contract and that it is meant to be no more than a reference. Thus, there is no factual question for a jury to decide.

C.    <u>The District Court properly dismissed the breach of contract claim because, even if there was a binding contract, Appellant cannot plead any facts to support her breach of contract claim</u>

Finally, the District Court properly dismissed the breach of contract claim even after assuming that, as alleged by Appellant, the Faculty Handbook constitutes a binding contract. Mem. Op. at 10.

As she did in the District Court, Appellant continues to assert that University President should not have been involved in the tenure process because "[t]he [Merger] Agreement clearly instructs at page 8 that the provisions of Chapter 14 of

the DCSL Rules 'shall' be amended to provide for the University President to have final authority." App. Brief at 18. Appellant asserts that this amendment never occurred, and thus, the University President was never given the final authority to make tenure decisions. *Id.*

The District Court properly rejected Appellant's argument. Contrary to Appellant's assertion, the D.C. Council formally codified and incorporated by reference the provisions set forth in the Merger Agreement. Specifically, D.C. Code § 38-1202.11(c) states: "The [Board of] Trustees shall be bound by the terms of the Merger Agreement between the University of the District of Columbia and the District of Columbia School of Law." *Id.*

In addition, even in the absence of a legislative amendment, Appellant pled, and the District Court accepted as true, that the Faculty Handbook incorporates the Merger Agreement. Mem. Op. at 10 (citing Am. Compl. ¶¶ 11, 60, 62). The Merger Agreement expressly provides that the University President has final decisionmaking authority with respect to tenure and promotion applications. Mem. Op. at 11. In stark contrast, the Faculty Handbook, which Appellant relies upon, is devoid of any procedures after FERC's review and recommendation. Mem. Op. at 11. Because the Faculty Handbook incorporates by reference the process outlined in the Merger Agreement, and because the Merger Agreement was legislatively incorporated by reference pursuant to D.C. Code § 38-1202.11(c), and because

Appellant expressly pled that she received the process set forth in the Merger Agreement, the District Court properly concluded that Appellant could not plead any set of facts that would entitle her to relief.

Thus, the District Court's decision dismissing Appellant's breach of contract claim should be affirmed.

III.    THE LOWER COURT PROPERLY DISMISSED APPELLANT'S BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM.

The District Court properly dismissed Appellant's claim of implied covenant of good faith and fair dealing because she failed to plead facts establishing a valid contractual agreement.

In her appeal, Appellant's sole argument appears to be that the Court should reverse the dismissal of this claim because there was a valid contract. App. Brief at 20-21. As illustrated above and in the lower court's decision, Appellant failed to plead sufficient facts to support the existence of a valid contract in this case. Because there was no contract between the parties, Appellee could not, and cannot, state a claim for breach of the covenant of good faith and fair dealing. Thus, the lower court properly dismissed this claim.

IV.    THE LOWER COURT PROPERLY DISMISSED APPELLANT'S WRONGFUL TERMINATION CLAIM.

In appealing the dismissal of the wrongful termination claim, Appellant incorporates by reference the argument contained in her opposition to Defendants'

Motion to Dismiss regarding her wrongful termination claim. App. Brief at 21. Appellant does not point to any legal error by the District Court. As demonstrated below, the District Court did not err in dismissing this claim.

The District Court properly dismissed Appellant's wrongful termination claim on several grounds. Mem. Op. at 13-15. First, the District Court dismissed the wrongful termination claim because Appellant "cannot recast her 'breach' claim as a wrongful termination claim, especially where she has not shown that her breach of contract claims are distinguishable from her wrongful termination claim." Mem. Op. at 13. To that end, much like Appellant's breach of contract claims, the District Court correctly held that her wrongful termination claim rests upon her assertion that the University President did not have legal authority to deny her tenure and ultimately terminate her employment, and the University President's conduct violated D.C. law, the Faculty Handbook, and the Merger Agreement. *Compare* Am. Compl. ¶¶ 60-62 with ¶¶ Am. Compl. 65-66 with Am. Compl. ¶¶ 69-71.

The District Court also dismissed the wrongful termination claim because Appellant's employment was terminable at-will pursuant to Section 1423 of the D.C. Municipal Regulations, Title 8A, and because she failed to identify the public policy upon which her wrongful termination claim was based. Mem. Op. at 14-15. As held by the District Court, a wrongful termination claim is a derogation of the

22

at-will employment relationship and can only be brought based upon employer conduct that "offends some mandate of public policy that is firmly anchored in either the Constitution of in a statute or regulation which clearly reflects the particular public policy being relied upon and … [that policy] arise[s] from a statute or regulation that does not provide its own remedy." Mem. Op. at 14 (citing and quoting *Carson v. Sim*, 778 F. Supp. 2d 85, 97 (D.D.C. 2011). The public policy exceptions are construed narrowly, and may include "situations 'where an employee suffers an adverse action for refusing to break the law or for following the law to the detriment of her employer.'" *Id.* at 14-15 (citing *Chisholm v. Dist. of Columbia*, 666 F. Supp. 2d 96, 117 (D.D.C. 2009)).

In this case, the District Court properly concluded that Appellant failed to identify the necessary public policy purportedly violated by the denial of her tenure application. Appellant does not dispute or challenge the District Court's ruling. Thus, her wrongful termination claim failed as a matter of law and was correctly dismissed. Therefore, the lower court's decision dismissing Appellant's wrongful termination claim should be upheld.

## V.    THE LOWER COURT PROPERLY DISMISSED APPELLANT'S RACE AND GENDER DISCRIMINATION CLAIMS UNDER THE D.C. HUMAN RIGHTS ACT AND 42 U.S.C. § 1981.

The lower court properly dismissed Appellant's race and gender

discrimination claims under Rule 12(b)(6).[5] The District Court correctly held that Appellant "allege[d] no set of facts, beyond threadbare and conclusory assertion, from which a reasonable person could infer *how* her gender or race caused her tenure rejection, as opposed to any other, non-discriminatory basis, leaving the Court to infer that the act was discriminatory simply based on the fact that she is a woman, or that she is African-American, or both." Mem. Op. at 17. As held by the District Court, it was "not required to accept inferences drawn by the [Appellant] if those inferences are unsupported by facts alleged in the complaint." Mem. Op. at 17 (citations omitted).

The lower court also properly held that any "discriminatory inference is especially weak given the fact that the two people who allegedly considered [Appellant's] tenure application unlawfully are either African-American (President Sessoms) or a woman (Provost Baxter)." Mem. Op. at 17 (citations to Amended Complaint and Plaintiff's Opposition omitted). Thus, Appellant did not allege any

---

[5] To plead a claim of discrimination based on race or gender under the DCHRA, Appellant was required to aver some facts that support her assertion that an unfavorable action gives rise to an inference of discrimination. *Elam v. Board of Trustees of the Univ. of the District of Columbia*, 530 F. Supp. 2d 4, 12-13 (recognizing that D.C. courts "often look to cases construing Title VII to aid ... in construing the [DCHRA]") (citations and quotations omitted). Similarly, to establish a claim under 42 U.S.C. §1981, Plaintiff must establish a *prima facie* case, demonstrating that: (1) she is a member of a protected class, (2) she suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination. *Id.* ("federal claims of race discrimination in the employment context brought under §1981 and §1983 are also resolved under the same Title VII principles") (citations and quotations omitted).

facts that could give rise to an inference of discrimination on the basis of race or gender.

Moreover, the District Court properly accepted as true all of Appellant's factual allegations, and held that "even drawing all reasonable inferences from those allegations in [Appellant's] favor, plaintiff fail[ed] to provide any support for her conclusory allegation that she was 'equally, if not more qualified than [Professor] McLain, based upon applicable tenure criteria' but was 'subject to the typical double standard rooted in the history of race discrimination in American jurisprudence.'" Mem. Op. at 18 (citations to Amended Complaint omitted).

On appeal, Appellant baldly asserts, without any supporting citations, that the District Court's analysis "would effectively paralyze intra-gender racial discrimination and intra-racial discrimination by a Black male against a black woman." Appellant's Br. at 22. In making this assertion, Appellant misstates the focus on the District Court's opinion. The District Court did not conclude that discrimination did or did not occur. Rather, pursuant to the applicable standard of review for Rule 12(b)(6) motions, the lower court focused solely on the quality of Appellant's pleadings, held that her pleadings were "threadbare and conclusory," and that no inference of discrimination can be drawn because of her failure "to provide any support of her conclusory allegation ...." Mem. Op. at 18. Indeed, the District Court highlighted Appellant's own admission, which she pled and which

was also accepted as true for purposes of a Rule 12(b)(b) motion, that she herself did not have the requisite number of published law review articles ...." Mem. Op. at 18.

On appeal, Appellant asserts that she did not concede that she did not have the requisite number of publications. However, she provides no support for this assertion. App. Brief at 25. On its face, the Amended Complaint does not contain any allegation that Appellant satisfied the publication requirement nor does she identify any additional "legal contributions" that she alleges should have been considered. Mem. Op. at 18.

Appellant also argues on appeal that the District Court erred in holding that a discriminatory inference was "especially weak" because the President and Provost were members of the same protected classes as Appellant. Mem. Op. at 17. Appellant misconstrues *George v. Leavitt*, 407 F.3d 405 (C.A.D.C. 2005), because it does not hold that "intra-"gender or race are permitted. *George* involved a claim of discrimination by an African-American employee against an African-American supervisor. The court in *George* overturned the lower court's ruling granting summary judgment to the employer because the plaintiff had presented sufficient evidence that could allow a reasonable jury to conclude that she did not have performance deficiencies or conduct issues, and thus, there was no legitimate basis for her termination. *See George generally.* The court did not make any mention of

whether the fact that the plaintiff and the supervisor were of the same race weakened or strengthened the inference of discrimination.

In summary, Appellant pled, and the District Court accepted as true, that she and Professor McLain had very different experiences and specialties with respect to their academic records. Such vast differences only highlight the necessity of the well-established deference to university officials with respect to tenure decisions. Specifically, it is well settled that courts generally "show great respect for [the university administrator and/or] faculty's professional judgment." *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985). "Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Id.* (citing *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)). As such, courts are "particularly wary of second-guessing a university's decisions concerning faculty members." *Elam v. Board of Trustees of the Univ. of the District of Columbia*, 530 F. Supp. 2d 4, 32 (D.D.C. 2007) (citation omitted). *See also Allworth v. Howard University*, 890 A.2d 194, 202 (D.C. 2006). As the D.C. Court of Appeals has recognized, "courts should not invade, and only rarely assume academic oversight, except with greatest caution and restraint, in such sensitive areas as faculty appointment, promotion, and tenure, especially in institutions of higher learning." *Allworth*, 890 A.2d at 202 (quoting *Brown v.*

*George Washington Univ.*, 802 A.2d 382, 385 (D.C. 2002)).  Thus, even where a university professor "loves teaching, devoted substantial time to it, and excelled at teaching [as well as] made a strong contribution to curriculum revision," her claim must fail if she "did not show sufficient productivity in the important areas of research, publication and grantsmanship."  *Id.* at 203.  Here, the District Court properly held that Appellant's concession was fatal to any claims of race or gender discrimination because there were no facts alleged demonstrating or inferring that her tenure application was denied because of her gender or race.  Therefore, the lower court's decision dismissing Appellant's race and gender discrimination claims should be upheld.

## VI.    THE LOWER COURT PROPERLY DISMISSED APPELLANT'S NEGLIGENT SUPERVISION CLAIM.

In her appeal, Appellant merely cites the elements of a cause of action for negligent supervision[6] and states that she pled sufficient facts to support this claim.

---

[6] To establish a claim of negligent supervision, a plaintiff must establish that the employer "knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee."  *Phelan v. City of Mt. Rainier*, 805 A.2d 930, 937 (D.C. 2002) (quotation omitted).  In asserting this claim, a plaintiff "must allege facts which show that the defendant breached some legally imposed duty owed to the plaintiff ….," which is a necessary element of any negligence claim.  *See Jolevare v. Alpha Kappa Alpha Sorority, Inc.*, 521 F. Supp. 2d 1, 15 (D.D.C. 2007) (quotations and citations omitted); *Tarpeh-Doe v. United States*, 28 F.3d 120, 123 (D.C. Cir. 1994) (citations omitted) (noting that the plaintiff bears the burden of presenting evidence establishing the applicable standard of care, demonstrating that this standard has

28

App. Brief at 28-29. However, as the lower court properly held, Appellant failed to identify any specific legal duty or standard of care that the DCSL and the Board allegedly breached by allowing the Provost and/or the President to make tenure decisions. Mem. Op. at 20-21.

In her opposition to Defendant's Motion to Dismiss, Appellant asserts that the Board of Trustees has a duty "to comply with Chapter 14 of Title 8A D.C.M.R and its customs." Opp. to MTD at 25. Appellant also asserts that "neither the President nor Provost have a legal right to make final law school faulty tenure decision [*sic*]." *Id.* Appellant further proclaims that "FERC has made recommendations, and the recommendations have been forwarded to the Board of Trustees for its final approval." *Id.* (citing Am. Compl. ¶ 13).

Contrary to Appellant's assertions, Chapter 14 of Title 8A does not provide for any such process. Rather the proper process, which is outlined in the Faculty Handbook and the Merger Agreement and which was provided to Appellant, is initial consideration by the FERC, which forwards its positive recommendations to the Dean, who then forwards the recommendations with his or her own recommendations to the Provost, who then forwards the recommendations with his or her own recommendations to the University President for final approval. Furthermore, Chapter 14 of Title 8A does not obligate the Board of Trustees in any

_____

been violated and a causal relationship exists between the violation and the harm complained of).

way, and therefore, it cannot be the source of any legal duty owed to Appellant.

In addition, the Board of Trustees has delegated the "authority and responsibility for the academic and administrative affairs and operations of the University and the components thereof" to the University President. D.C.M.R. 8B § 202.1 (MTD, Ex. 6). The Board of Trustees has also delegated to the University President the authority to "appoint, promote, demote, and dismiss University employees." D.C.M.R. 8B §202.6. To the extent the Board of Trustees has a legal duty to Plaintiff arising from these delegations, Plaintiff has not pled any facts asserting that the Board somehow breached this duty.

Thus, the lower court's decision dismissing Appellant's negligent supervision claim should be upheld.

## **CONCLUSION**

For all the foregoing reasons, Appellees respectfully request that this Court affirm the lower court's decision.

September 5, 2013                              Respectfully submitted,

                                              WILSON, ELSER, MOSKOWITZ,
                                              EDELMAN & DICKER LLP

                                    By:       /s/ Yoora Pak
                                              Yoora Pak (D.C. Bar No. 467007)
                                              8444 Westpark Drive - Suite 510
                                              McLean, VA 22102-5102
                                              (703) 245-9300 (telephone)
                                              (703) 245-9301 (facsimile)
                                              yoora.pak@wilsonelser.com
                                              *Counsel for Defendants*
                                              *The University of the District of*
                                              *Columbia, Board of Trustees of the*
                                              *University of the District of*
                                              *Columbia, and Allen Sessoms*

CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains <u>7,266</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word 2003</u> in <u>14pt Times New Roman</u> font.

Dated: September 5, 2013                    <u>/s/ Yoora Pak</u>
                                            *Counsel for Appellees*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of September 2013, Appellee's Brief

was served via CM/ECF on the following:

>Donald M. Temple, Esquire
>1229 15th Street, N.W.
>Washington, D.C. 20005
>dtemplelaw@gmail.com
>*Counsel for Plaintiff*

>/s/ Yoora Pak
>Yoora Pak (D.C. Bar No. 467007)
>8444 Westpark Drive - Suite 510
>McLean, VA 22102-5102
>(703) 245-9300 (telephone)
>(703) 245-9301 (facsimile)
>yoora.pak@wilsonelser.com
>*Counsel for Defendants*
>*The University of the District of*
>*Columbia, Board of Trustees of the*
>*University of the District of*
>*Columbia, and Allen Sessoms*